**EXHIBIT "A"**
**Legal Description**

Lot 434, MOON VALLEY II, according to the plat recorded in Book 92 of Maps, pages 27, 28 and 29, records of Maricopa County, Arizona.

LEGAL DESCRIPTION

# WESTLAND TITLE AGENCY

Return To:
WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

Prepared By:
WELLS FARGO BANK, N.A.

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20070523012 05/04/2007 10:42
70180907-22-4-4—
ELECTRONIC RECORDING

1595 SPRUCE ST,, RIVERSIDE,
CA  925060000

————————[Space Above This Line For Recording Data]————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **APRIL 27, 2007** together with all Riders to this document.
(B) "Borrower" is **AZADEH FAMILI, A MARRIED PERSON**

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
**254 OAKLAND ROAD, GLENDORA, CA 91741**
(C) "Lender" is **WELLS FARGO BANK, N.A.**

Lender is a **NATIONAL ASSOCIATION**
organized and existing under the laws of **THE UNITED STATES**

ARIZONA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3003  1/01 (rev. 6/02)



-6(AZ) (0204)
Page 1 of 15          Initials AF
VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT 1

Lender's mailing address is **P.O. BOX 11701, NEWARK, NJ   071014701**

Lender is the beneficiary under this Security Instrument.
(D) **"Trustee"** is **FIRST AMERICAN TITLE INS CO**

. Trustee's mailing address is

**3030 NORTH CENTRAL, PHOENIX, AZ   85012**

(E) **"Note"** means the promissory note signed by Borrower and dated **APRIL 27, 2007**
The Note states that Borrower owes Lender **FOUR HUNDRED TWELVE THOUSAND AND 00/100**

Dollars
(U.S. $****412,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **MAY 01, 2037**
(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider              [X] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider          [ ] Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) **"Escrow Items"** means those items that are described in Section 3.
(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

VMP -6(AZ) (0206)                            Page 2 of 15                    Initials A.F.   Form 3003  1/01 (rev. 6/02)

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                                of **MARICOPA**                                            :
　　　　　　[Type of Recording Jurisdiction]                                [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

*SEE ADJUSTABLE RATE RIDER
THIS IS A PURCHASE MONEY SECURITY INSTRUMENT.

Parcel ID Number: **208-27-443**
**409 EAST BRAEBURN DRIVE**
**PHOENIX**

which currently has the address of
[Street]
[City], Arizona **85022**                    [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items

-6(AZ) (0206)                                     Page 3 of 15                     Initials A.F.       Form 3003  1/01 (rev. 6/02)

pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

18

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

20

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

23

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

24

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

25

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicers and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

27

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
AZADEH FAMILI                     -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)    _____ (Seal)
                      -Borrower                                 -Borrower

_____ (Seal)    _____ (Seal)
                      -Borrower                                 -Borrower

_____ (Seal)    _____ (Seal)
                      -Borrower                                 -Borrower

California

**STATE OF ARIZONA,**                                    Los Angeles        County ss:

    The foregoing instrument was acknowledged before me this    April 30TH 2007
by **AZADEH FAMILI**

My Commission Expires:    FEB 2/2

NOAH ARIA SAEEDY
COMM. # 1643505
NOTARY PUBLIC-CALIFORNIA
COUNTY OF LOS ANGELES
MY COMM. EXP. FEB. 5, 2010

Noah Saeed

Notary Public

-6(AZ) (0205)                    Page 15 of 15                    Form 3003    1/01 (rev. 6/02)

29

# INITIAL INTEREST$^{SM}$ ADJUSTABLE RATE RIDER
### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

THIS INITIAL INTEREST ADJUSTABLE RATE RIDER is made this 27          day of
APRIL   2007        , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date
given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable
Rate Note (the "Note") to WELLS FARGO BANK, N.A.

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:
409 EAST BRAEBURN DRIVE, PHOENIX, AZ   85022

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of          6.250%. The Note provides
for interest only payments until the first fully amortizing principal and interest payment due
date (the "First P&I Payment Due Date"), which is the first day of JUNE, 2012          .

The Note provides for changes in the interest rate and the monthly payments as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Interest Change Dates**

The interest rate I will pay may change on the first day of MAY, 2012          ,
and may change on that day every 12th month thereafter. Each date on which my interest
rate could change is called an "Interest Change Date."

**(B) The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index.
The "Index" is the weekly average yield on United States Treasury securities adjusted to a
constant maturity of one year, as made available by the Federal Reserve Board. The most
recent Index figure available as of the date 45 days before each Interest Change Date is called
the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is

**MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER - 1-Year Treasury Index
(Assumable after Initial Period)** - Single Family - **Freddie Mac UNIFORM INSTRUMENT**
NMFL #8361 (FM5R) Rev 5/12/2006

-191R (0508)   Form 5107 7/05
Page 1 of 4          Initials: A.F
VMP Mortgage Solutions, Inc          (800)521-7291

30

based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-QUARTERS** percentage point(s) ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than 11.250 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **TWO** percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1. UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

VMP®-191R (0508)            Page 2 of 4         Initials: A.F.        Form 5107 7/05

31

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within

which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
AZADEH FAMILI                    -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower


VMP-191R (0508)                    Page 4 of 4                    Form 5107 7/05

33

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this **27TH**          day of **APRIL, 2007** ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower" whether there are one or more persons undersigned) to secure Borrower's Note to
**WELLS FARGO BANK, N.A.**

(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:
**409 EAST BRAEBURN DRIVE, PHOENIX, AZ   85022**

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by
the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the
Property or give a management firm or any other person any control over the occupancy or use
of the Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application
process, Borrower or any persons or entities acting at the direction of Borrower or with
Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or
statements to Lender (or failed to provide Lender with material information) in connection with
the Loan. Material representations include, but are not limited to, representations concerning
Borrower's occupancy of the Property as Borrower's second home.

MULTISTATE SECOND HOME RIDER - Single Family -
Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                                      Form 3890 1/01

Page 1 of 2                                    Initials: A F

-365R (0011)                  VMP MORTGAGE FORMS - (800)521-7291

34

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____ (Seal)          _____ (Seal)
AZADEH FAMILI              - Borrower                                   - Borrower

_____ (Seal)          _____ (Seal)
                          - Borrower                                   - Borrower

_____ (Seal)          _____ (Seal)
                          - Borrower                                   - Borrower

_____ (Seal)          _____ (Seal)
                          - Borrower                                   - Borrower

-365R (0011)                     Page 2 of 2                     Form 3890 1/01

35

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20121141680   12/14/2012   02:55
ELECTRONIC RECORDING

1093670asn-2-1-1--
mcdevittr

SERVICELINK

When recorded return to:
U.S. BANK NATIONAL ASSOCIATION
60 LIVINGSTON AVE
ST. PAUL, MN 55107

## ASSIGNMENT OF DEED TRUST

EXHIBIT 2

Return To:

Recording Requested By
ServiceLink

[Space Above This Line For Recording Data]

Pool#: WFNPA 2012-04                                                    Loan#

## Assignment of DEED OF TRUST

FOR VALUE RECEIVED, Wells Fargo Bank, N.A., whose address is 2701 Wells Fargo Way, Minneapolis,
MN 55467, hereby sells, assigns, and transfers to: **U.S. Bank National Association not in its individual capacity,
but solely as Legal Title Trustee for LVS Title Trust I**
*whose address is 60 Livingston Ave., St. Paul, MN 55107*
its successors and assigns, all its right, title and interest in and to a certain **DEED OF TRUST** executed by
**AZADEH FAMILI, A MARRIED PERSON** to **WELLS FARGO BANK, N. A.** and bearing the date of
04/27/2007 recorded in the office of the Recorder of **MARICOPA** County, State of **Arizona** in Book
_____ at Page _____ as Document No. 20070523012 on 05/04/2007.

Signed this day: 5/30/2012                    Wells Fargo Bank, N.A.
Effective Date: 6/27/2012
                                              By:
                                              Name: Edward G. Olson
                                              Title: Vice President Loan Documentation

*STATE OF MINNESOTA}*
*COUNTY OF HENNEPIN} SS.*

*On 5/30/2012, before me, Matthew Joseph Beumer, a Notary Public, personally appeared Edward G. Olson, 2701
Wells Fargo Way, Minneapolis, MN 55467, to me known, who being duly sworn, did say that he is the Vice
President Loan Documentation of Wells Fargo Bank, N.A., and acknowledged to me that he executed the same in his
capacity and that said instrument was executed on behalf of said corporation.*

PREPARED BY:                                  Notary Public
Edward G. Olson (612) 312-9469
Wells Fargo Bank, N.A.                              MATTHEW JOSEPH BEUMER
2701 Wells Fargo Way                               NOTARY PUBLIC-MINNESOTA
Minneapolis, MN 55467                           My Commission Expires Jan. 31, 2017
                                                   Commission # 31019712

37

# INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE NOTE

### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

APRIL 27, 2007                SCOTTSDALE                          ARIZONA

[Date]                                          [City]                                [State]

409 EAST BRAEBURN DRIVE, PHOENIX, AZ  85022

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****412,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **WELLS FARGO BANK, N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.250 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on **JUNE 01, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on **MAY 01, 2037**                  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **WELLS FARGO HOME MORTGAGE, P.O. BOX 11701, NEWARK, NJ 071014701** or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $*********2,145.83    . This amount may change in accordance with subsection (C) below.

### (C) Monthly Payment Changes

The First P&I Payment Due Date is the first day of                      06/01/12

---

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT                                                                  Form 5507 5/04 (rev. 7/05)

NMFL #8380 (MS1C) Rev 2/27/2006

VMP®-191N (0506)

UMP Mortgage Solutions, Inc (800)521-7291

Page 1 of 5                                    Initials 

EXHIBIT 3

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Beginning with the First P&I Payment Due Date my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note.

Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Interest Change Dates

The interest rate I will pay may change on the first day of **MAY, 2012**                    , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-QUARTERS**          percentage point(s) (          **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than          **11.250** % or less than          **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **TWO**          percentage point(s) (          **2.000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than          **11.250** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

VMP-191N (0508)                    Page 2 of 5                    Form 5507 5/04 (rev. 7/05)    Initials A.F.

39

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000 % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.


40

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### (A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### (B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

-191N (05081)      Page 4 of 5      Form 5507 5/04 (rev. 7/06)
Initials A.F.

41

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
AZADEH FAMILI                    -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                -Borrower                                      -Borrower


*[Sign Original Only]*

# RELATIONSHIP ARM
## ALLONGE AND ADDENDUM TO NOTE

APRIL 27, 2007        SCOTTSDALE        ARIZONA
[Date]               [City]               [State]

409 EAST BRAEBURN DRIVE, PHOENIX, AZ   85022

[Property Address]

THIS RELATIONSHIP ARM ALLONGE AND ADDENDUM TO NOTE (the "Addendum") is made this 27TH day of **APRIL** ,2007 , is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned Borrower ("Borrower" whether one or more) in favor of **WELLS FARGO BANK, N.A.**

("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a certain Deed of Trust/Mortgage/Security Deed, in favor of Lender dated the same date as this Addendum (the "Security Instrument"), covering the premises described in the Security Instrument.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

## 1.    RELATIONSHIP ARM

Borrower has agreed to pay the rate of interest set forth in Section 2 of the Note (the "Base Rate") until that interest rate may change in accordance with Section 4 of the Note (the "Initial Interest Rate Period"). Borrower and Lender acknowledge and agree that the Base Rate was determined in reliance on the Borrower maintaining certain account balances and relationships in Eligible Accounts with Wells Fargo Bank (the "Bank") (collectively the "Bank Relationship") during the Initial Interest Rate Period of the loan evidenced by this Note, as more particularly described in the Relationship ARM Supplement to the Loan Disclosure. Balances held in the following types of Wells Fargo accounts will be considered as part of the Bank Relationship: Checking, Savings, Money Market, Certificate of Deposit, Individual Retirement Account, Brokerage (Full Service or Discount), Investment Management, Credit Card, Auto Loan, Student Loan, Consumer Loans or Lines of Credit (excluding first mortgage loans) and Home Equity Loans or Lines of Credit (excluding the subject property). Other types of accounts may be considered on a case-by-case basis. Borrower acknowledges that the Base Rate reflects a reduction in the market interest rate of **ONE-QUARTER** percent ( **·250** %) (the "Relationship Discount") based on a Bank Relationship in Eligible Accounts of

**$50,000 TO $249,999, OR IF YOUR ORIGINAL LOAN AMOUNT IS GREATER THAN $1,500,000, 25% TO 34.99% OF YOUR ORIGINAL LOAN AMOUNT.**

If you live in a state where the Bank does not have any branches, you must also have Automatic Mortgage Payment from your checking account. In the event the Borrower increases the Bank Relationship after closing, no additional discounts will be applied to the Base Rate. In the event a sufficient Bank Relationship does not exist in the Borrower's Eligible Accounts during the Initial Interest Rate Period, Borrower and Lender agree that the Lender may increase the Base Rate in accordance with Section 2 of this Addendum. A sufficient Bank Relationship means the minimum Bank Relationship that was established in support of the Relationship Discount prior to your loan closing.

## 2.    ADJUSTMENT TO INTEREST RATE AND MONTHLY PAYMENT CHANGES

Reviews of your Bank Relationship will be conducted periodically during the Initial Interest Rate Period. If at any time, it is determined that a sufficient Bank Relationship does not exist, Lender will send to Borrower a written reminder and allow a grace period of at least sixty (60) days from the date of the notice for Borrower to restore a sufficient Bank Relationship. If a sufficient Bank Relationship has not been restored by the end of the grace period, Lender will send to Borrower a written notice of interest rate adjustment increasing the Base Rate.

The amount of your interest rate increase will vary from .125% to .500% and will be effective the date of the first payment due date occurring immediately after the date of the interest rate increase notice. The amount of your rate increase will be based on the amount of your existing Relationship Discount and the amount of your reduced Bank Relationship determined in accordance with the Relationship ARM Supplement to the Loan Disclosure. Your Bank Relationship will be determined as of the last day of the grace period. The interest increase will be added to the Base Rate set forth in Section 2 of the Note. Lender will deliver or mail to Borrower the notice of the increase to the Base Rate at least twenty-five (25) days before the due date of the new monthly payment amount. The notice will include the new interest rate, the effective date of the interest rate change, the amount of the new monthly payment due under the Note, the effective date of that new payment, and the outstanding principal balance of the Note.

43

Initial A F

**3.    NO OTHER CHANGE TO NOTE**
Except as otherwise specifically provided in this Addendum, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Addendum.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Relationship ARM Allonge and Addendum to Note.

_____        _____
AZADEH FAMILI                    -Borrower                                                    -Borrower


_____        _____
                         -Borrower                                                    -Borrower

NMFL #5040L (RAAL)
Page 2 of 2

**PLEASE STOP SALE**

**SALE DATE:  THURSDAY, FEBRUARY 28, 2013 AT 12:30 P.M.**

**TRUSTEE SALE # AZ-12-496273-CT**

**BANKRUPTCY CASE # 2:12-bk-49853-SK**
**BANKRUPTCY CASE # 2:13-bk-13375-SK**
**BANKRUPTCY CASE # 2:13-bk-13470-SK**

**PROPERTY ADDRESS:**

**AZADEH FAMILI**

**409 EAST BRAEBURN DRIVE PHOENIX, AZ 85022**

**APN: 208-27-443    MARICOPA COUNTY**

**QUALITY LOAN SERVICE CORPORATION FAX NUMBER:**

**(619) 568-3596**

**PLEASE STOP SALE**

45                                                          EXHIBIT 4

Recorded at the Request of: AZADEH FAMILI

When Recorded, mail to:
AZADEH FAMILI
409 EAST BRAEBURN DRIVE
PHOENIX, AZ 85022

Order No:                          (No Transfer Fee Necessary Exempt Under ARS 11-1134 A-7)

# Warranty Deed

For valuable consideration, receipt of which is hereby acknowledged, I,

AZADEH FAMILI, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY,

do hereby convey to

JOSEPHINE C. CONTE, as to a Five percent (5%) interest AND ELENA CAMPOS as to a Five percent (5%) interest, AND GUILLERMINA JAIMES, as to a Five percent (5%) interest, as tenants in common.

the following described real property located in Maricopa County, Arizona:

COMMONLY KNOWN AS: 409 EAST BRAEBURN DRIVE PHOENIX, AZ 85022   APN: 208-27-443

SEE "EXHIBIT A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE FOR LEGAL DESCRIPTION

Subject to current taxes and other assessments, reservations in patents and all easements, rights-of-way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record, the Grantor warrants the title against all persons whomsoever.

Dated: _October 5, 2012_

_____
AZADEH FAMILI

State of Arizona }

County of _Maricopa_

On _October 5, 2012_ before me, _Timothy Lewis_, personally

appeared _Azadeh Famili_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
TIMOTHY LEWIS
My Commission Expires March 21, 2013
Notary Public Seal

NOTE: The parties are cautioned that by completing and executing this document, legal rights, duties and obligations are created. By signing, the parties acknowledge that they have been advised to seek and obtain independent legal counsel as to all matters contained in the within document prior to signing same and that said parties have obtained advice or choose to proceed without same.

02/28/2013  10:34 p    TO:+1 (619) 5603596  FROM:8183223876          Page: 3

**EXHIBIT "A"**
**Legal Description**


Lot 434, MOON VALLEY II, according to the plat recorded in Book 92 of Maps, pages 27, 28 and 29, records of Maricopa County, Arizona.

02/28/2013    10:34 p    TO:+1 (619) 5603596  FROM:8103223076          Page: 4

Case 2:13-bk-13470-SK   Doc 12-1   Filed 03/05/13   Entered 03/05/13 15:37:13   Desc
CM/ECF - U.S. Bankruptcy Court (v4.2 - LIVE)                                    Page 1 of 1
Exhibit   Page 35 of 61

United States Bankruptcy Court
Central District Of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under
Chapter 13 of the United States Bankruptcy Code, entered on
12/03/2012 at 12:53 PM and filed on 12/03/2012.



**Josephine C Conte**
153 S Hobart Blvd
Los Angeles, CA 90004
213-447-4318
SSN / ITIN: xxx-xx-3250
*aka* **Josephine Camba Conte**

The bankruptcy trustee is:

**Kathy A Dockery (TR)**
700 S. Flower Street, Suite 1950

Los Angeles, CA 90017
(213) 996-4400

The case was assigned case number 2:12-bk-49853-SK to Judge Sandra R. Klein.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist
at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your
rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at
our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple Street,, Los Angeles,
CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy Court**

United States Bankruptcy Court
Central District Of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under
Chapter 13 of the United States Bankruptcy Code, entered on
02/11/2013 at 10:34 AM and filed on 02/11/2013.



**FILED**
**02/11/2013**

**Guillermina Jaimes**
3818 E Florence Ave
Bell, CA 90201
SSN / ITIN: xxx-xx-5310

The bankruptcy trustee is:

**Kathy A Dockery (TR)**
700 S. Flower Street, Suite 1950

Los Angeles, CA 90017
(213) 996-4400

The case was assigned case number 2:13-bk-13470-SK to Judge Sandra R. Klein.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist
at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your
rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at
our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple Street,, Los Angeles,
CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy Court**

https://ecf.cacb.uscourts.gov/cgi-bin/NoticeOfFiling.pl21561605          2/24/2013

02/28/2013  10:34 p    TO:+1 (619) 5683596  FROM:8183223876           Page: 6

Case 2:13-bk-13440-SK   Doc 12-1 Filed 03/05/13   Entered 03/05/13 15:37:13   Desc
CM/ECF - U.S. Bankruptcy Court (v6.4.2 - LIVE)
Exhibit    Page 37 of 61

United States Bankruptcy Court
Central District Of California

# Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under
Chapter 13 of the United States Bankruptcy Code, entered on
02/08/2013 at 3:52 PM and filed on 02/08/2013.

**Elena Campos**
8617 Chestnut Ave #D
South Gate, CA 90280
SSN / ITIN: xxx-xx-2861

The bankruptcy trustee is:

**Kathy A Dockery (TR)**
700 S. Flower Street, Suite 1950

Los Angeles, CA 90017
(213) 996-4400

The case was assigned case number 2:13-bk-13375-SK to Judge Sandra R. Klein.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist
at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your
rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at
our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple Street,, Los Angeles,
CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy Court**

02/28/2013  10:34 p  TO:+1 (619) 5683596 FROM:8183223876        Page: 7

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20120175299  03/01/2012  04:45
ELECTRONIC RECORDING

Recording requested by:

1093670-2-1-1--
Sotor

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

---

TS No.: **AZ-12-496273-CT**
Order No.: **1093670**

Space above this line for recorders use

# Notice of Trustee's Sale

The following legally described trust property will be sold, pursuant to the power of Sale under that certain Deed of Trust dated 4/27/2007 and recorded 5/4/2007 as Instrument 20070523012,   in the office of the County Recorder of MARICOPA County, Arizona  at public auction to the highest bidder:

| | |
|---|---|
| Sale Date and Time: | 6/1/2012 at 12:30:00 PM |
| Sale Location: | At the main entrance of the Superior Court Building, 201 West Jefferson, Phoenix, AZ |
| Legal Description: | LOT 434, MOON VALLEY II, ACCORDING TO THE PLAT RECORDED IN BOOK 92 OF MAPS, PAGES 27, 28 AND 29, RECORDS OF MARICOPA COUNTY, ARIZONA. |
| Purported Street Address: | 409 EAST BRAEBURN DRIVE, PHOENIX, AZ 85022 |
| Tax Parcel Number: | 208-27-443 |
| Original Principal Balance: | $412,000.00 |
| Name and Address of Current Beneficiary: | Wells Fargo Bank, NA<br>C/O WELLS FARGO BANK<br>1 Home Campus X2504-017 Customer Service<br>Des Moines, IA 50328 |
| Name(s) and Address(s) of Original Trustor(s): | AZADEH FAMILI, A MARRIED PERSON<br>254 OAKLAND ROAD, GLENDORA, CA 91741 |
| Name and Address of Trustee/Agent: | Quality Loan Service Corporation<br>2141 5th Avenue, San Diego, CA 92101<br>Phone: (866)-645-7711<br>Sales Line: 714-573-1965<br>Login to: www.priorityposting.com<br>AZ-12-496273-CT |

The successor trustee qualifies to act as a trustee under A.R.S. §33-803(A)(1) in its capacity as a licensed Arizona escrow agent regulated by the Department of Financial Institutions.

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall be entitled only to a return of the monies paid to the Trustee. This shall be the Purchaser's sole and exclusive remedy. The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Dated:

**MAR 0 1 2012**

QUALITY LOAN SERVICE CORPORATION

By: **Mauro Guzman, Assistant Secretary**

State of: **California**          )
                                 ) ss
County of: **San Diego**         )

On ___MAR 0 1 2012___ before me, **B. Perez**, a notary public, personally appeared **Mauro Guzman**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of *California* that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
                B. Perez

B. PEREZ
Commission # 1903663
Notary Public - California
San Diego County
My Comm. Expires Sep 15, 2014

**PLEASE STOP SALE**

**SALE DATE:  FRIDAY, SEPTEMBER 14, 2012 AT 12:30 P.M.**

**TRUSTEE SALE # AZ-12-496273-CT**

**BANKRUPTCY CASE # 1:12-bk-17484-MT**

**PROPERTY ADDRESS:**

**AZADEH FAMILI**

**409 EAST BRAEBURN DRIVE PHOENIX, AZ 85022**

**APN: 208-27-443      MARICOPA COUNTY**

**QUALITY LOAN SERVICE CORPORATION FAX NUMBER:**

**(619) 568-3596**

**PLEASE STOP SALE**

EXHIBIT 5

09/14/2012 09:36 p TO:+1 (619) 5603596 FROM:3233896323 Page: 2

Case 2:13-bk-13470-SK Doc 12-1 Filed 03/05/13 Entered 03/05/13 15:37:13 Desc
Recorded at the Request of: AZADEH FAMILI Exhibit Page 41 of 61

When Recorded, mail to:
AZADEH FAMILI
409 EAST BRAEBURN DRIVE
PHOENIX, AZ 85022

Order No:                          (No Transfer Fee Necessary Exempt Under ARS 11-1134 A-7)

# Warranty Deed

For valuable consideration, receipt of which is hereby acknowledged, I,

AZADEH FAMILI, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY,

do hereby convey to

MARIAN GARCIA, as to a Five Percent (5%) interest as a tenant in common.

the following described real property located in Maricopa County, Arizona:

COMMONLY KNOWN AS: 409 EAST BRAEBURN DRIVE PHOENIX, AZ 85022   APN: 208-27-443

SEE "EXHIBIT A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE FOR LEGAL DESCRIPTION

Subject to current taxes and other assessments, reservations in patents and all easements, rights-of-way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record, the Grantor warrants the title against all persons whomsoever.

Dated: _August 15, 2012_

_AZADEH FAMILI_

State of Arizona }

County of _Maricopa_

On _August 15, 2012_ before me, _Timothy Lewis_ , personally

appeared _Azadeh Famili_ _____ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
TIMOTHY LEWIS
My Commission Expires August 27, 2013

NOTE; The parties are cautioned that by completing and executing this document, legal rights, duties and obligations are created. By signing, the parties acknowledge that they have been advised to seek and obtain independent legal counsel as to all matters contained in the within document prior to signing same and that said parties have obtained advice or choose to proceed without same.

## EXHIBIT "A"
### Legal Description

Lot 434, MOON VALLEY II, according to the plat recorded in Book 92 of Maps, pages 27, 28 and 29, records of Maricopa County, Arizona.

United States Bankruptcy Court
Central District Of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was
filed under Chapter 13 of the United States Bankruptcy Code,
entered on 08/20/2012 at 4:08 PM and filed on 08/20/2012.



**FILED**
**08/20/2012**

**Marian Garcia**
16901 Napa St Apt 209
North Hills, CA 91343
SSN / ITIN: xxx-xx-2461

The bankruptcy trustee is:

**Elizabeth (SV) F Rojas (TR)**
Noble Professional Center
15060 Ventura Blvd., Suite 240

Sherman Oaks, CA 91403
818-933-5700

The case was assigned case number 1:12-bk-17484-MT to Judge Maureen Tighe.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 21041 Burbank
Blvd,, Woodland Hills, CA 91367-6603.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy**
**Court**



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20120175299 03/01/2012 04:45
ELECTRONIC RECORDING

Recording requested by:

1093670-2-1-1--
Sotor

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

TS No.: **AZ-12-496273-CT**
Order No.: **1093670**

Space above this line for recorders use

## Notice of Trustee's Sale

The following legally described trust property will be sold, pursuant to the power of Sale under that certain Deed of Trust dated 4/27/2007 and recorded 5/4/2007 as Instrument 20070523012, in the office of the County Recorder of MARICOPA County, Arizona at public auction to the highest bidder:

| | |
|---|---|
| Sale Date and Time: | 6/1/2012 at 12:30:00 PM |
| Sale Location: | At the main entrance of the Superior Court Building, 201 West Jefferson, Phoenix, AZ |
| Legal Description: | LOT 434, MOON VALLEY II, ACCORDING TO THE PLAT RECORDED IN BOOK 92 OF MAPS, PAGES 27, 28 AND 29, RECORDS OF MARICOPA COUNTY, ARIZONA. |
| Purported Street Address: | 409 EAST BRAEBURN DRIVE, PHOENIX, AZ 85022 |
| Tax Parcel Number: | 208-27-443 |
| Original Principal Balance: | $412,000.00 |
| Name and Address of Current Beneficiary: | Wells Fargo Bank, NA C/O WELLS FARGO BANK 1 Home Campus X2504-017 Customer Service Des Moines, IA 50328 |
| Name(s) and Address(s) of Original Trustor(s): | AZADEH FAMILI, A MARRIED PERSON 254 OAKLAND ROAD, GLENDORA, CA 91741 |
| Name and Address of Trustee/Agent: | Quality Loan Service Corporation 2141 5th Avenue, San Diego, CA 92101 Phone: (866)-645-7711 Sales Line: 714-573-1965 Login to: www.priorityposting.com AZ-12-496273-CT |

The successor trustee qualifies to act as a trustee under A.R.S. §33-803(A)(1) in its capacity as a licensed Arizona escrow agent regulated by the Department of Financial Institutions.

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall be entitled only to a return of the monies paid to the Trustee. This shall be the Purchaser's sole and exclusive remedy. The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Dated:

**MAR 0 1 2012**

QUALITY LOAN SERVICE CORPORATION

By: **Mauro Guzman, Assistant Secretary**

State of: **California** )
                              ) ss
County of: **San Diego** )

On ___**MAR 0 1 2012**___ before me, **B. Perez**, a notary public, personally appeared **Mauro Guzman**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of *California* that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
                  B. Perez

B. PEREZ
Commission # 1903663
Notary Public - California
San Diego County
My Comm. Expires Sep 15, 2014

**PLEASE STOP SALE**

**SALE DATE:  MONDAY, NOVEMBER 05, 2012AT 12:30 P.M.**

**TRUSTEE SALE # AZ-12-496273-CT**

**BANKRUPTCY CASE # 1:12-bk-18089-VK**

**PROPERTY ADDRESS:**

**AZADEH FAMILI**

**409 EAST BRAEBURN DRIVE PHOENIX, AZ 85022**

**APN: 208-27-443      MARICOPA COUNTY**

**QUALITY LOAN SERVICE CORPORATION FAX NUMBER:**

**(619) 568-3596**

**PLEASE STOP SALE**

Recorded at the Request of: AZADEH FAMILI

When Recorded, mail to:
AZADEH FAMILI
409 EAST BRAEBURN DRIVE
PHOENIX, AZ 85022

Order No:                    (No Transfer Fee Necessary Exempt Under ARS 11-1134 A-7)

# Warranty Deed

For valuable consideration, receipt of which is hereby acknowledged, I,

AZADEH FAMILI, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY,

do hereby convey to

IMAD J. KHOURY, as to a Five Percent (5%) interest as a tenant in common.

the following described real property located in Maricopa County, Arizona:

COMMONLY KNOWN AS: 409 EAST BRAEBURN DRIVE PHOENIX, AZ 85022   APN: 208-27-443

SEE "EXHIBIT A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE FOR LEGAL DESCRIPTION

Subject to current taxes and other assessments, reservations in patents and all easements, rights-of-way, encumbrances, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record, the Grantor warrants the title against all persons whomsoever.

Dated: _October 5, 2012_

_____
AZADEH FAMILI

State of Arizona }

County of _Maricopa_

On _October 5, 2012_ before me, _Timothy Lewis_, personally

appeared _Azadeh Famili_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
TIMOTHY LEWIS
My Commission Expires March 21, 2013
Notary Public Seal

NOTE: The parties are cautioned that by completing and executing this document, legal rights, duties and obligations are created. By signing, the parties acknowledge that they have been advised to seek and obtain independent legal counsel as to all matters contained in the within document prior to signing same and that said parties have obtained advice or choose to proceed without same.

60

11/5/2012   11:54 p    TO:+1 (619) 5683596   FROM:3233896323           Page: 3

## EXHIBIT "A"
### Legal Description

Lot 434, MOON VALLEY II, according to the plat recorded in Book 92 of Maps, pages 27, 28 and 29, records of Maricopa County, Arizona.

11/5/2012   11:54 p   TO:+1 (619) 5683596  FROM:3233896323           Page: 4

CM/ECF - U.S. Bankruptcy Court (v6.4)- LIVE Case 2:13-bk-13440-SK  Doc 12-1  Filed 03/05/13   Entered 03/05/13 15:37:13   Desc
Exhibit    Page 49 of 61

United States Bankruptcy Court
Central District Of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was
filed under Chapter 13 of the United States Bankruptcy Code,
entered on 09/10/2012 at 4:08 PM and filed on 09/10/2012.

**FILED**
**09/10/2012**

**Imad J Khoury**
11240 Strathern St
Sun Valley, CA 91352
SSN / ITIN: xxx-xx-8589

The bankruptcy trustee is:

**Elizabeth (SV) F Rojas (TR)**
Noble Professional Center
15060 Ventura Blvd., Suite 240

Sherman Oaks, CA 91403
818-933-5700

The case was assigned case number 1:12-bk-18089-VK to Judge Victoria S. Kaufman.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 21041 Burbank
Blvd,, Woodland Hills, CA 91367-6603.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy**
**Court**

62

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20120175299  03/01/2012  04:45
ELECTRONIC RECORDING

Recording requested by:

1093670-2-1-1--
Sotor

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

---

TS No.: **AZ-12-496273-CT**
Order No.: **1093670**

Space above this line for recorders use

# Notice of Trustee's Sale

The following legally described trust property will be sold, pursuant to the power of Sale under that certain Deed of Trust dated 4/27/2007 and recorded 5/4/2007 as Instrument 20070523012,   in the office of the County Recorder of MARICOPA County, Arizona  at public auction to the highest bidder:

| | |
|---|---|
| Sale Date and Time: | 6/1/2012 at 12:30:00 PM |
| Sale Location: | At the main entrance of the Superior Court Building, 201 West Jefferson, Phoenix, AZ |
| Legal Description: | LOT 434, MOON VALLEY II, ACCORDING TO THE PLAT RECORDED IN BOOK 92 OF MAPS, PAGES 27, 28 AND 29, RECORDS OF MARICOPA COUNTY, ARIZONA. |
| Purported Street Address: | 409 EAST BRAEBURN DRIVE, PHOENIX, AZ 85022 |
| Tax Parcel Number: | 208-27-443 |
| Original Principal Balance: | $412,000.00 |
| Name and Address of Current Beneficiary: | Wells Fargo Bank, NA C/O WELLS FARGO BANK 1 Home Campus X2504-017 Customer Service Des Moines, IA 50328 |
| Name(s) and Address(s) of Original Trustor(s): | AZADEH FAMILI, A MARRIED PERSON 254 OAKLAND ROAD, GLENDORA, CA 91741 |
| Name and Address of Trustee/Agent: | Quality Loan Service Corporation 2141 5th Avenue, San Diego, CA 92101 Phone: (866)-645-7711 Sales Line: 714-573-1965 Login to: www.priorityposting.com AZ-12-496273-CT |

**The successor trustee qualifies to act as a trustee under A.R.S. §33-803(A)(1) in its capacity as a licensed Arizona escrow agent regulated by the Department of Financial Institutions.**

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall be entitled only to a return of the monies paid to the Trustee.  This shall be the Purchaser's sole and exclusive remedy.   The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Dated:

**MAR 0 1 2012**

QUALITY LOAN SERVICE CORPORATION

By: **Mauro Guzman, Assistant Secretary**

State of: **California**      )
                             ) ss
County of: **San Diego**    )

On ___**MAR 0 1 2012**_____ before me, **B. Perez**, a notary public, personally appeared **Mauro Guzman**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of *California* that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
            B. Perez

B. PEREZ
Commission # 1903563
Notary Public - California
San Diego County
My Comm. Expires Sep 15, 2014

**CLOSED**

# U.S. Bankruptcy Court
## Central District Of California (San Fernando Valley)
## Bankruptcy Petition #: 1:11-bk-17632-AA

|  |  |
|---|---|
| | *Date filed:* 06/22/2011 |

*Assigned to:* Alan M. Ahart

*Date terminated:* 09/20/2011

Chapter 7

*Debtor discharged:* 09/16/2011

Voluntary

*Joint debtor discharged:* 09/16/2011

No asset

*Debtor disposition:* Standard Discharge
*Joint debtor disposition:* Standard Discharge

| | |
|---|---|
| ***Debtor*** | represented by **Fredric J Greenblatt** |
| **Imad Jiries Khoury** | Greenblatt & Associates |
| 11240 Strathern Street | 22151 Ventura Blvd Ste 200 |
| Sun Valley, CA 91352 | Woodland Hills, CA 91364-1600 |
| LOS ANGELES-CA | 818-992-1188 |
| SSN / ITIN: xxx-xx-8589 | Fax : 818-992-7687 |
| ***aka* Imad Khoury** | Email: fjg@greenblattlaw.com |

| | |
|---|---|
| ***Joint Debtor*** | represented by **Fredric J Greenblatt** |
| **Anita Imad Khoury** | (See above for address) |
| 11240 Strathern Street | |
| Sun Valley, CA 91352 | |
| LOS ANGELES-CA | |
| SSN / ITIN: xxx-xx-7540 | |
| ***aka* Anita Khoury** | |

***Trustee***
**Nancy J Zamora (TR)**
U.S. Bank Tower
633 West 5th Street, Suite 2600
Los Angeles, CA 90071
213-488-9411

***U.S. Trustee***
**United States Trustee (SV)**
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

| Filing Date | # | Docket Text |
|---|---|---|
| | | Chapter 7 Voluntary Petition . Fee Amount $299 Filed by Imad |

65

**EXHIBIT 6**

**PRVDISM, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Central District Of California (San Fernando Valley)
### Bankruptcy Petition #: 1:12-bk-17484-MT

|  |  |
|---|---|
| *Assigned to:* Maureen Tighe | *Date filed:* 08/20/2012 |
| Chapter 13 | *Date terminated:* 11/14/2012 |
| Voluntary | *Debtor dismissed:* 10/15/2012 |
| Asset |  |

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Marian Garcia** |
| **Marian Garcia** | PRO SE |
| 16901 Napa St Apt 209 | |
| North Hills, CA 91343 | |
| LOS ANGELES-CA | |
| SSN / ITIN: xxx-xx-2461 | |

**Trustee**
**Elizabeth (SV) F Rojas (TR)**
Noble Professional Center
15060 Ventura Blvd., Suite 240
Sherman Oaks, CA 91403
818-933-5700

**U.S. Trustee**
**United States Trustee (SV)**
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

| Filing Date | # | Docket Text |
|---|---|---|
| | | Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Marian Garcia Schedule A due 9/4/2012. Schedule B due 9/4/2012. Schedule C due 9/4/2012. Schedule D due 9/4/2012. Schedule E due 9/4/2012. Schedule F due 9/4/2012. Schedule G due 9/4/2012. Schedule H due 9/4/2012. Schedule I due 9/4/2012. Schedule J due 9/4/2012. Statement of Financial Affairs due 9/4/2012. Chapter 13 Plan due by 9/4/2012. Statement - Form 22C Due: 9/4/2012. Summary of schedules due 9/4/2012. Declaration concerning debtors schedules due 9/4/2012. Statistical Summary due 9/4/2012. Debtor Certification of Employment Income due by 9/4/2012. Incomplete Filings due by 9/4/2012. (Suarez, Mary) (Entered: |

66

**PRVDISCH**

# U.S. Bankruptcy Court
## Central District Of California (San Fernando Valley)
## Bankruptcy Petition #: 1:12-bk-18089-VK

*Date filed:* 09/10/2012

*Assigned to:* Victoria S. Kaufman
Chapter 13
Voluntary
Asset

| | |
|---|---|
| *Debtor* | represented by **Imad J Khoury** |
| **Imad J Khoury** | PRO SE |
| 11240 Strathern St | |
| Sun Valley, CA 91352 | **Grace White** |
| LOS ANGELES-CA | Grace White Esq |
| SSN / ITIN: xxx-xx-8589 | 21650 Oxnard St Ste 1630 |
| | Woodland Hills, CA 91367 |
| | 818-346-2606 |
| | Fax : 818-346-2605 |
| | Email: gracewhiteesq@sbcglobal.net |
| | |
| | *TERMINATED: 11/27/2012* |

*Trustee*
**Elizabeth (SV) F Rojas (TR)**
Noble Professional Center
15060 Ventura Blvd., Suite 240
Sherman Oaks, CA 91403
818-933-5700

*U.S. Trustee*
**United States Trustee (SV)**
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

| Filing Date | # | Docket Text |
|---|---|---|
| | | Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Imad J Khoury Schedule B due 9/24/2012. Schedule C due 9/24/2012. Schedule E due 9/24/2012. Schedule F due 9/24/2012. Schedule G due 9/24/2012. Schedule H due 9/24/2012. Schedule I due 9/24/2012. Schedule J due 9/24/2012. Statement of Financial Affairs due 9/24/2012. Chapter 13 Plan due by 9/24/2012. Statement - Form 22C Due: 9/24/2012.Statement of Related Case due 9/24/2012. Notice of |

**PRVDISM, DISMISSED**

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
## Bankruptcy Petition #: 2:12-bk-49853-SK

*Date filed:* 12/03/2012
*Debtor dismissed:* 02/25/2013

*Assigned to:* Sandra R. Klein
Chapter 13
Voluntary
Asset

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Josephine C Conte** |
| **Josephine C Conte** | PRO SE |
| 153 S Hobart Blvd | |
| Los Angeles, CA 90004 | |
| LOS ANGELES-CA | |
| 213-447-4318 | |
| SSN / ITIN: xxx-xx-3250 | |
| *aka* **Josephine Camba Conte** | |

*Trustee*
**Kathy A Dockery (TR)**
700 S. Flower Street, Suite 1950
Los Angeles, CA 90017
(213) 996-4400

*U.S. Trustee*
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
| 12/03/2012 | [1](#) | Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Josephine C Conte Schedule A due 12/17/2012. Schedule B due 12/17/2012. Schedule F due 12/17/2012. Statement of Financial Affairs due 12/17/2012. Summary of schedules due 12/17/2012. Statistical Summary due 12/17/2012. Incomplete Filings due by 12/17/2012. (Moulton, Sheila) (Entered: 12/03/2012) |
| | | Meeting of Creditors with 341(a) meeting to be held on 01/18/2013 at 09:00 AM at RM 103, 725 S Figueroa St, Los Angeles, CA 90017. Confirmation hearing to be held on 02/21/2013 at 10:00 AM at Crtrm 1575, 255 E Temple St., Los |

**U.S. Bankruptcy Court**
**Central District Of California (Los Angeles)**
**Bankruptcy Petition #: 2:13-bk-13375-SK**

*Date filed:* 02/08/2013

*Assigned to:* Sandra R. Klein
Chapter 13
Voluntary
Asset

represented by **Elena Campos**
PRO SE

*Debtor*
**Elena Campos**
8617 Chestnut Ave #D
South Gate, CA 90280
LOS ANGELES-CA
SSN / ITIN: xxx-xx-2861

*Trustee*
**Kathy A Dockery (TR)**
700 S. Flower Street, Suite 1950
Los Angeles, CA 90017
(213) 996-4400

*U.S. Trustee*
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
| | | Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Elena Campos Schedule A due 2/22/2013. Schedule B due 2/22/2013. Schedule C due 2/22/2013. Schedule D due 2/22/2013. Schedule E due 2/22/2013. Schedule F due 2/22/2013. Schedule G due 2/22/2013. Schedule H due 2/22/2013. Schedule I due 2/22/2013. Schedule J due 2/22/2013. Statement of Financial Affairs due 2/22/2013. Chapter 13 Plan due by 2/22/2013. Statement - Form 22C Due: 2/22/2013. Summary of |

69

When recorded mail to:

Name: _____

Address: _____

_____

City/State/Zip: _____

_____

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2013-0185828 02/27/13 02:54 PM
1 OF 1

GARCIAC

tf

## *CAPTION HEADING:*

# DO NOT REMOVE

## This is part of the official document

70

EXHIBIT 7

UNITED STATES BANKRUPTCY COURT - CENTRAL DISTRICT OF CALIFORNIA

## UNITED STATES BANKRUPTCY COURT
### Central District of California

I hereby attest and certify that on ___2/25/13___ the attached reproduction(s), containing ___3___ pages, is a full, true and correct copy of the complete document entitled: ___Order Granting Motion for Relief___

___From___

Case #: ___1:12-bk-16084-VK___  Doc #: ___

which includes:  ☐ Exhibits  ☐ Attachments

on file in my office and in my legal custody at the marked location:

☐ 255 E. Temple Street, Suite 940
Los Angeles, CA 90012

☐ 3420 Twelfth Street, Suite 125
Riverside, CA 92501-3819

☐ 411 West 4th Street, Suite 2074
Santa Ana, CA 92701-4593

☐ 1415 State Street
Santa Barbara, CA 93101-2511

☒ 21041 Burbank Boulevard
Woodland Hills, CA 91367

KATHLEEN J. CAMPBELL
**Clerk of Court**

By: _____
Deputy Clerk

## THIS <u>CERTIFICATION</u> IS VALID ONLY WITH THE UNITED STATES BANKRUPTCY COURT SEAL.

Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address
JaVonne M. Phillips, Esq. SBN 187474
Summer Eberhard, Esq. SBN 267556
**McCarthy & Holthus, LLP**
1770 Fourth Avenue
San Diego, CA 92101
Phone (877) 369-6122
Fax (619) 685-4810

FOR COURT USE ONLY

**FILED & ENTERED**

**FEB 22 2013**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY pgarcia   DEPUTY CLERK

☒ *Attorney for Movant(s)*
☐ *Movant(s) appearing without attorney*

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Imad J. Khoury,<br><br><br><br><br><br>Debtor. | CASE NO.: 1:12-bk-18089-VK<br><br>CHAPTER: 13<br><br>**ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)**<br><br>DATE: 2/20/2013<br>TIME: 9:30 AM<br>COURTROOM: 301<br>PLACE: 21041 Burbank Boulevard, Woodland Hills, CA |

Movant: **U.S. Bank National Association, not in its individual capacity, but solely as Legal Title Trustee for LVS Title Trust I, its assignees and/or successors, by and through its servicing agent BSI Financial Services, Inc.**

1. The Motion was:    ☐ Opposed    ☒ Unopposed    ☐ Settled by stipulation

2. The Motion affects the following real property ("Property"):

   *Street Address:*    409 East Braeburn Drive
   *Unit Number:*
   *City, State, Zip Code:*    Phoenix, AZ 85022

   Legal description or document recording number (including county of recording): 20070523012, Maricopa County, Arizona

   ## Lot 434, MOON VALLEY II, according to the plat recorded in Book 92 of Maps, pages 27, 28 and 29, records of Maricopa County, Arizona.

   ☐ See attached page.

3. The Motion is granted under:    ☒ 11 U.S.C. § 362(d)(1)    ☐ 11 U.S.C. § 362(d)(2)    ☐ 11 U.S.C. § 362(d)(3)
                                    ☒ 11 U.S.C. § 362(d)(4)

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. As to Movant, its successors, transferees and assigns ("Movant"), the stay of 11 U.S.C. § 362(a) is:
   a. ☒ Terminated as to Debtor(s) and Debtor's(s') bankruptcy estate.
   b. ☐ Annulled retroactively to the date of the bankruptcy petition filing.
   c. ☐ Modified or conditioned as set forth in Exhibit _____ to this Order.

5. ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable non-bankruptcy law, but may not pursue any deficiency claim against the Debtor(s) or property of the estate except by filing a Proof of Claim pursuant to 11 U.S.C. § 501.

6. Movant must not conduct a foreclosure sale before the following date (specify): _____

7. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Attachment to this Order.

8. ☒ In chapter 13 cases, the trustee shall not make any further payments on account of Movant's secured claim after entry of this Order. The secured portion of Movant's claim is deemed withdrawn upon entry of this Order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant shall return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this Order.

9. ☒ The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved either:

   ☒ transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval.

   ☒ multiple bankruptcy filings affecting the Property.

   If recorded in compliance with applicable state laws governing notices of interest or liens in the Property, this Order is binding and effective under 11 U.S.C. § 362(d)4(A) and (B) in any other bankruptcy case purporting to affect the Property filed not later than two (2) years after the date of entry of this Order, except that a debtor in a subsequent bankruptcy case may move for relief from this Order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local governmental unit that accepts notices of interests or liens in real property shall accept a certified copy of this Order for indexing and recording.

10. This court further orders as follows:

    a. ☒ The 14-day stay provided by FRBP 4001(a)(3) is waived.
    b. ☐ The provisions set forth in the Extraordinary Relief Attachment shall also apply (attach Optional Form F 4001-10-ER).
    c. ☐ See attached continuation page for additional provisions.

###

Date: February 22, 2013

Victoria S. Kaufman
United States Bankruptcy Judge

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (Real Property)** was entered on the date indicated as ª½ƒ½ªƒ½ªª¼ on the first page of this judgment or order and will be served in the manner stated below:

**1.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (date) 02/22/2013_____, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

> **TRUSTEE**
> Elizabeth (SV) F Rojas (TR)
> cacb_ecf_sv@ch13wla.com

**COUNSEL FOR MOVANT**
McCarthy & Holthus, LLP
bknotice@mccarthyholthus.com

☐ Service information continued on attached page

**2.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

**DEBTOR(S)**
Imad J. Khoury, 11240 Strathern St, Sun Valley, CA 91352

☐ Service information continued on attached page

**3.   TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.